UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JASON L. EDMONSON,

    Plaintiff,

v.                                                         Case No. 12-C-0889

SGT. DESMOND and OFFICER OLSON,

    Defendants.

---

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

      Plaintiff Jason L. Edmonson sued Sergeant Charles Desmond and Officer Polly Olson of the City of Appleton Police Department under 42 U.S.C. § 1983 for allegedly violating his constitutional rights in the course of responding to a complaint by Edmonson's fiancé that he had falsely imprisoned, beaten and sexually assaulted her. More specifically, Edmonson alleges that the defendants illegally arrested and searched his property without probable cause. Edmonson also claims that he was questioned in violation of his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). Before me now are cross motions for summary judgment. For the reasons that follow, Edmonson's motion will be denied, and the defendants' motion will be granted.

**BACKGROUND**

      Edmonson's former fiancee, Lori Fleming, called the Appleton Police Department on September 4, 2006, and requested police assistance. Appleton Police Sergeant Charles Desmond

responded to the call and completed an initial interview with Fleming at the residence she shared with Edmonson. Fleming told Sergeant Desmond that Edmonson had broken into her locked bedroom and the two had an argument. She stated that Edmonson hit her several times and had sexual intercourse with her without her permission. Appleton Police Officer Polly Olson, a sexual assault investigator, also reported to the home to assist Sergeant Desmond with the investigation. During Officer Olson's interview, Fleming explained in greater detail the circumstances of the alleged crime, including that in addition to hitting her and having non-consensual sexual contact with her, Edmonson pinned her down, choked her, and refused to let her leave the bedroom. Officer Olson also observed Fleming's injuries and other evidence collected at the scene, including bedding, clothing, and a damaged fork used to pry the bedroom door open.

Meanwhile, after speaking with Fleming, Sergeant Desmond contacted dispatch and requested that officers attempt to locate Edmonson. Thereafter, two Town of Grand police officers stopped Edmonson and took him into custody. On September 6, 2006, Sergeant Desmond and Sergeant Michael Daul completed a videotaped interview of Edmonson at the Appleton Police Department. (*See* Desmond Aff., ECF No. 28.) The officers informed Edmonson that he was not free to leave and explained his *Miranda* rights. Edmonson acknowledged that he understood, and when Sergeant Desmond asked whether Edmonson wanted to waive his rights and to speak with the officers, Edmonson wrote "no" on the Waiver of Rights form. When the officers attempted to clarify, Edmonson stated "no," he did not want to talk. Sergeant Desmond stated "okay," but went on to state that he was looking for Edmonson's cooperation, and explained that Edmonson could choose to stop the questioning at any time or choose not to answer specific questions. Edmonson

2

apparently changed his mind, crossing out the word "no" and writing "yes" on the waiver form and proceeding to answer the officers' questions.

Edmonson was charged with felony false imprisonment and two counts of second-degree sexual assault, as well as misdemeanor counts of battery and disorderly conduct. On September 21, 2006, a preliminary hearing was held during which the court received testimony from Fleming alone. The court determined there was a sufficient basis to bind Edmonson over on the felony charges. On November 13, 2007, Edmonson was convicted by a jury of battery and false imprisonment, and found not guilty of the two counts of sexual assault and disorderly conduct. The trial court vacated the false imprisonment conviction for insufficient evidence, but it was reinstated on appeal. *State v. Edmonson*, 2009 WI App 95, 2009 WL 1212716 (unpublished decision).

Edmonson filed this lawsuit under 28 U.S.C. § 1983 on August 30, 2012, alleging, among other things, that Sergeant Desmond and Officer Olson violated his Fourth and Fifth Amendment rights. He has filed a motion for summary judgment arguing that he is entitled to judgment in his favor because the defendants arrested him and searched his home without a warrant or probable cause. Defendants have also filed a motion for summary judgment, asserting that Edmonson's Fourth and Fifth Amendment claims fail as a matter of law. They also argue that Sergeant Desmond and Officer Olson are entitled to qualified immunity and Edmonson's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

**LEGAL STANDARD**

A motion for summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the non-movant's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

**A.**     *Heck* **Doctrine**

The defendants argue that Edmonson's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* bars a § 1983 plaintiff from bringing suit to recover damages "for harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff proves that the conviction or sentence has already been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the

4

invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (emphasis in original).

A Fourth Amendment violation such as a wrongful arrest does not necessarily undermine the validity of a conviction. *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004). Nor does a claim that a plaintiff gave incriminating statements in violation of his *Miranda* and Fifth Amendment rights. From the record before the court, it cannot be determined that Edmonson's claims, if successful, would necessarily imply the invalidity of his conviction. "Because of doctrines like independent source and inevitable discovery, and especially harmless error, . . . a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487, n.7; *accord. Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004) ("It is true that a conviction can often stand, despite the fact that police may have obtained evidence without probable cause or a warrant in violation of the Fourth Amendment. The availability of other evidence to support a conviction or, as the Court itself noted in *Heck*, the applicability of the inevitable discovery and independent source doctrines, which allow the use of evidence even though it was illegally obtained, make such an outcome more than a possibility."). The defendants simply assert that a finding that Edmonson was arrested without probable cause or that his statements were taken after he invoked his right to remain silent *could* invalidate his conviction. However, such a finding as to either issue would not necessarily undermine his conviction depending on whether and how the evidence allegedly obtained in violation of Edmonson's rights was used at trial. The parties have not submitted evidence related to this point, and the decisions of the state courts are not in the record. Therefore, summary judgment cannot be granted on this basis.

5

Edmonson also argues that *Heck* does not apply because he is no longer incarcerated in connection to the case that gives rise to his § 1983 claims. Where federal habeas relief is not available because a prisoner is no longer "in custody," *Heck* may not bar a § 1983 suit for damages. *See Spencer v. Kemna*, 523 U.S. 1, 20-21 (1998) (plurality opinion) (stating, in dictum, "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy"); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) (holding that "a prisoner may bring a § 1983 claim 'challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal habeas corpus.'" (quoting *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999)); *Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir. 1999) ("[T]here is probably an exception to the rule of *Heck* for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction."); *Poventud v. City of New York*, 715 F.3d 57 (2d Cir. 2013) ("Because [the plaintiff] is no longer in custody, and therefore can no longer bring a federal habeas suit, *Heck*'s narrow exception to § 1983's otherwise broad coverage does not apply."). Edmonson apparently has completed his sentence related to the incident giving rise to his claims here. Therefore, it would appear that he is foreclosed from obtaining habeas relief, and as a result, his claims are not barred by *Heck*. In any event, the issue is not dispositive here because Edmonson's claims fail as a matter of law on other grounds.

**B. Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. "Government officials performing discretionary functions are shielded from damage liability insofar as their conduct does

6

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannoia v. Farrow*, 476 F.3d 453, 457 (7th Cir. 2007). Thus, in order to overcome a defense of qualified immunity, the plaintiff in a § 1983 case must prove (1) that the defendant's conduct violated the plaintiff's federal statutory or constitutional rights, and (2) the right at issue was clearly established at the time of the defendant's conduct such that a reasonable officer would understand that his or her actions are in violation of that right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Here, Edmonson cannot establish that the defendants violated his constitutional rights, and therefore, the defendants are entitled to summary judgment in their favor.

### 1. **First and Fourteenth Amendment Claims**

Edmonson claims that he was unlawfully arrested without a warrant and his home and property were unlawfully searched and seized in violation of his Fourth and Fourteenth Amendment rights. Probable cause to arrest is an absolute defense to a § 1983 suit against police officers claiming a Fourth Amendment violation. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Mustafa*, 442 F.3d at 547; *accord. Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080-83 (2011); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Whren v. United States*, 517 U.S. 806 (1996)). "[I]n order to survive summary judgment, [the plaintiff] needed to raise a genuine issue regarding whether the officers had probable cause to arrest him." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000).

7

Police officers have probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known to the officers at the time, that a crime had been committed. *McBride*, 576 F.3d at 707; *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) (explaining that probable cause is evaluated "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer–seeing what he saw, hearing what he heard"). "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp*, 320 F.3d at 743 (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). If the test is satisfied, "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646.

Edmonson argues that Fleming "was not a reliable source of information for police to use to establish probable cause themselves." (Pl.'s Opp'n Br. 3, ECF No. 35.) Therefore, he asserts, Sergeant Desmond "wrongfully assumed" Edmonson committed a sexual assault and the ensuing arrest, search, seizure, and questioning were all illegal. In determining there is probable cause to arrest, police may rely exclusively on a victim's complaint, and need not make any further effort to investigate or corroborate the victim's version of events so long as a reasonable officer would find the victim's complaint credible. *Woods*, 234 F.3d at 996-97 ("[W]e have consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause."); *see also, e.g.*, *Phillips*, 668 F.3d at 914 ("Police need not run down all leads before making an arrest–especially not when a crime is violent and leaving the perpetrator at large may endanger other persons. Nor need police wait for alibis, which even when presented they need not believe."); *McBride*, 576 F.3d at 707 ("Normally, an officer may base a determination of

8

probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth."); *Johnson v. Saville*, 575 F.3d 656 (7th Cir. 2009) (finding a victim's report to police that she was sexually assaulted was sufficient to establish probable cause); *Beauchamp*, 320 F.3d at 743 ("[I]n crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth."); *Tangwall v. Stuckey*, 135 F.3d 510, 516 (7th Cir. 1998) ("[O]nce a putative victim . . . has positively identified her attacker to the police and they have no reason to disbelieve her, the officers 'need not take any additional steps to corroborate the information regarding the crime before taking action.'") (italics omitted) (quoting *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991)).

Aside from his conclusory accusation that Fleming's account was not reliable, Edmonson offers no evidence to support even a tenuous inference that it was unreasonable to believe Fleming. The undisputed facts known to Sergeant Desmond supported his assessment of probable cause: Fleming called the police to her house and told Desmond that Edmonson had hit her several times and had sexual intercourse with her without her permission. There is nothing in the record to indicate Fleming's information was incredible. Moreover, Sergeant Desmond acted on more than Flemings statements alone in making his probable cause determination–both Desmond and Officer Olson observed Fleming's injuries and the damage to the bedroom door where she stated Edmonson broke his way in, which corroborated her version of events. What is more, even if, as Edmonson claims, the officers did not have probable cause to arrest for sexual assault, he does nothing to challenge the fact that the officers had probable cause to arrest him for battery or false imprisonment. The fact that Edmonson might have had a defense to the crime or that he disputed

9

the victim's account of the facts is also irrelevant for purposes of assessing whether, at the time of arrest, the officers had information sufficient to establish probable cause.

Edmonson also baldly asserts that the officers conspired against him. But again, apart from conclusory allegations that his constitutional rights were violated, Edmonson has done nothing to substantiate his claim or to refute the defendants' evidence indicating that the officers had probable cause to order his arrest. The fact that Sergeant Desmond radioed information about Edmonson to other police agencies who later arrested him does not constitute a "conspiracy" giving rise to a cause of action. "Under the 'collective knowledge' doctrine, the officers who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of other officers." *United States v. Nicksion*, 628 F.3d 368, 376 (7th Cir. 2010) (citing *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005)). "In other words, there is no Fourth Amendment violation if the knowledge of the officer directing the stop, search, or arrest–or the collective knowledge of the agency for which he works–is sufficient to constitute probable cause." *Id.* (internal quotation omitted). "When an officer has 'received his information from some person–normally the putative victim or an eye witness–who it seems reasonable to believe is telling the truth' . . . he has probable cause." *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991). Here, Sergeant Desmond determined that there was probable cause to arrest Edmonson after interviewing Fleming, who was not only a witness to the crime, but knew and identified her attacker. He then conveyed that information to other officers who reasonably located Edmonson and took him into custody.

Edmonson also claims that the defendants conspired to violate his rights by "strategically wait[ing] until [Edmonson] was first illegally seized and deprived of his freedom of movement"

10

before conducting a search of his home. There is no dispute that Fleming consented to the search of the home she shared as a co-tenant with Edmonson. However, Edmonson claims that the search was somehow delayed until after he was arrested in order to prevent him from being present to give his consent. But he has presented no facts that support his conspiracy theory, no evidence indicating the police delayed in conducting a search, nor any evidence that police otherwise prevented him from being present at the time Fleming consented. In any case, his conclusory accusations are insufficient to create a genuine dispute.

### 2. Fifth Amendment Claim

Edmonson's Fifth Amendment claim does not entitle him to relief either. Edmonson's claim is premised on the fact that, after he was taken into custody and advised of his *Miranda* rights, he clearly invoked his right to remain silent, yet Sergeant Desmond and Sergeant Daul continued the interrogation. However, a violation of the *Miranda* safeguards cannot provide the basis for § 1983 liability unless the suspect's statements were against him in a criminal case. *Best v. City of Portland*, 554 F.3d 698, 702 (7th Cir. 2009); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1024-27 (7th Cir. 2006). The record does not reveal whether the government introduced into evidence any of Edmonson's statements taken after he allegedly invoked his right to silence, and Edmonson does not identify any evidence that was used against him as a result of his answers to the illegal police questioning. In fact, his statement appears to have been entirely exculpatory, so it is unlikely it would have been used by the state at trial. While the transcript of the September 21, 2006 preliminary hearing is in the record, it reveals that the only evidence presented was Fleming's testimony based on her first-hand account of the facts giving rise to the criminal charges.

11

Edmonson has the burden of identifying evidence upon which a jury could find in his favor on each element of his claims. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322-23. But, so far as the record reveals, Edmonson has failed to offer any evidence indicating that, even if there was a *Miranda* violation, any of his statements were used against him in the course of the criminal proceedings. "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks and citations omitted). Accordingly, Edmonson's Fifth Amendment claim cannot survive Defendants' motion for summary judgment.

## CONCLUSION

Taking the evidence in a light most favorable to Edmonson, no rational jury could find in his favor; there is no genuine issue of material fact, and therefore, no reason to go to trial. Based on the foregoing discussion, Edmonson's motion for summary judgment (ECF No. 29) is **DENIED**. The defendants' motion for summary judgment (ECF No. 27) is **GRANTED** and this action is ordered dismissed with prejudice. The Clerk is directed to enter judgment accordingly.

Dated this   24th   day of June, 2013.

       s/ William C. Griesbach
       William C. Griesbach, Chief Judge
       United States District Court